IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WESLEY WOODROW HIGDON,   ) | Civil Action No. 7:11-cv-00330 | |
|    Petitioner,                                  ) | | |
|                                                         ) | | |
| v.                                                               ) | **MEMORANDUM OPINION** | |
|                                                         ) | | |
| WARDEN LARRY JARVIS,           ) | By: | Hon. Michael F. Urbanski |
|    Respondent.                              ) | | United States District Judge |

      Wesley Woodrow Higdon, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  Petitioner argues that officials of the Virginia Department of Corrections ("VDOC") did not properly calculate his sentences.  Respondent filed a motion to dismiss, and the court directed respondent to supplement the motion.  Respondent filed the supplement, and the time for petitioner to respond has expired, making the matter ripe for disposition.  After reviewing the record, the court grants respondent's motion and dismisses the petition because petitioner is not entitled to relief.

I.

      Petitioner filed a state petition for a writ of habeas corpus with the Supreme Court of Virginia in April 2011.  Petitioner alleged that VDOC officials did not properly calculate his state sentences.  The Supreme Court of Virginia dismissed his petition on June 28, 2011, because it held that the matter "did not lie" in habeas relief, pursuant to Carroll v. Johnson, 278 Va. 693, 694, 685 S.E.2d 647 (2009).  Petitioner subsequently filed the instant federal habeas petition, arguing that VDOC officials erroneously calculated the length of his sentences by denying him certain credits that reduce his overall time of incarceration.

      Petitioner's various criminal judgments for possessing with intent to distribute controlled substances and obtaining money by false pretenses require him to serve a total term of

incarceration of nineteen years and eleven months, which equals 7,274 days. This total time of

incarceration is a result of the following criminal judgments.

¶ A  On August 11, 2000, the Fairfax County Circuit Court convicted petitioner of possession of a controlled drug (Case No. 97633) and sentenced him to one year's imprisonment. The Fairfax County Circuit Court amended the sentence on October 25, 2002, to be completely suspended.

¶ B  On June 7, 2004, the Stafford County Circuit Court convicted petitioner of possessing a controlled substance with intent to distribute (Case No. 03-901-03), sentenced him to forty years' consecutive imprisonment, but suspended thirty years. Thus, petitioner's active sentence was ten years (3,652 days) and was to be served consecutively to any prior sentence.

¶ C  On June 7, 2004, the Stafford County Circuit Court also convicted petitioner of a second count of possessing a controlled substance with intent to distribute (Case No. 03-901-02), sentenced him to forty years' imprisonment, but suspended the entire sentence.

¶ D  On September 3, 2004, the Loudon County Circuit Court determined petitioner violated the terms of a sentence imposed on December 21, 1998, for a first count of possessing marijuana with intent to distribute (Case No. 11531). The Loudon County Circuit Court revoked a prior sentence and imposed a four-year and eleven-month (1,796 days) sentence.

¶ E  On September 3, 2004, the Loudon County Circuit Court also determined that petitioner violated the terms of a sentence imposed on December 21, 1998, for a second count of possessing marijuana with intent to distribute (Case No. 11664). The Loudon County Circuit Court revoked a prior sentence and imposed a four-year and eleven-months sentence to be served concurrently with the sentence described in ¶ D, which is Case No. 11531.

¶ F  On September 3, 2004, the Loudon County Circuit Court also determined that petitioner violated the terms of a sentence imposed and suspended on May 8, 2000, for obtaining money by false pretenses (Case No. 13004). The Loudon County Circuit Court revoked a prior sentence and imposed a two-year consecutive sentence.

¶ G  On September 3, 2004, the Loudon County Circuit Court also determined that petitioner violated the terms of a sentence imposed and suspended on May 8, 2000, for possessing amphetamine with intent to distribute (Case No. 13005). The Loudon County Circuit Court revoked a prior sentence and imposed a suspended seventeen-year and six-month sentence.

¶ H  On March 30, 2005, the Fredericksburg City Circuit Court convicted petitioner of conspiring to distribute cocaine (Case No. CR04-788). The Fredericksburg City Circuit Court sentenced him to fifteen years' incarceration but suspended twelve years. Thus,

petitioner's active sentence is three years' incarceration to be served consecutively.

Petitioner alleges that he has been incarcerated at various local and regional correctional facilities since 1999. Specifically, petitioner sets out the following history of incarceration:

- the Loudon County Adult Detention Center between
    - December 31, 1999, and February 10, 2000,
    - February 14, 2000, and January 17, 2001,
    - and February 14, 2001, and February 16, 2001;
- the Fairfax Adult Detention Center between February 10, 2000, and February 14, 2000;
- the Rappahannock Regional Jail between August 15, 2003, and June 9, 2004;
- the Blue Ridge Regional Jail, Rappahannock Regional Jail, and Loudon County Adult Detention Center between June 9, 2004, and October 1, 2004;
- the Boxwood Treatment Center between January 17, 2001, and February 14, 2001; and
- Serenity Home, Inc. between February 16, 2001, and August 8, 2002.

Petitioner does not relate any specific term of incarceration at these various facilities to a specific criminal judgment entered against him.[1]

Petitioner generally alleges that the VDOC failed to accurately apply the jail credits for these periods toward his convictions listed in ¶¶ A through H. Petitioner argues that he received only 504[2] days' jail credit for the 538 days he spent at Serenity Home between February 16, 2001, and August 8, 2002. Petitioner concludes that he is entitled to an additional 34 days' jail credit for time spent at Serenity Home. Plaintiff also generally alleges that VDOC officials did not properly apply Earned Sentence Credit ("ESC") to his sentences.

---

[1] Some of the dates petitioner states that he spent at these facilities predate the judgments for which he is presently incarcerated as described in ¶¶ A – H. For example, petitioner was at the Loudon County Adult Detention Center between December 1999 and February 2000. The Loudon County sentences described in ¶¶ D through G were imposed in September 2004 after the Loudon County Circuit Court revoked a previously suspended sentence. Petitioner failed to clearly describe these terms of incarceration in his petition and never responded to any of the respondent's motions, calculations, or arguments about petitioner's sentences. The December 1999 to February 2000 term of incarceration may relate to an older criminal judgment, but petitioner does not provide this information.

[2] Although petitioner does not explain how he arrived at this number, the court presumes he calculated the number of days between November 18, 2009, which was his good time release date reported in his April 2008 Legal Update, and July 2, 2018, which was his good time release date reported in his January 2011 Legal Update.

3

For VDOC's time computation purposes, petitioner began serving his first ten-year (3,652 day) active sentence, as described in ¶ B, on June 28, 2002. More than two years later on October 1, 2004, the VDOC became responsible for petitioner's physical incarceration. The VDOC credited petitioner with 826 days' jail credit for the 826 days he spent imprisoned between June 28, 2002, and October 1, 2004. See Va. Code § 53.1-187 (permitting jail credit for time incarcerated before conviction). Thus, petitioner's 3,652 day sentence for ¶ B was reduced by 826 days, and he had to serve the 2,826 days remaining after October 1, 2004.

Virginia law also provides petitioner with additional time credit called Earned Sentence Credits ("ESC"). See Va. Code §§ 53.1-202.3 – 53.1-202.4 (providing for the creation of ESC and permitting the VDOC to create related rules and regulations). Between June 28, 2002, and October 1, 2004, petitioner earned 2.25 days' ESC for every thirty days he was incarcerated. (VDOC Operating Procedure ("OP") 830.3 (dkt. no. 16-2) § IV(B)(1).) Thus, petitioner earned 62 days' ESC for time he spent incarcerated before entering the VDOC. This credit further reduced the sentence described in ¶ B to 2,764 days.

Petitioner completed this remaining 2,764 day sentence on May 2, 2011, as a result of time served and ESC. Between October 1, 2004, and May 2, 2011, petitioner earned ESC at a rate of 4.5 days' credit for every thirty days served, which totaled 360 days' ESC.[3] (OP 830.3 § VIII(B).) Petitioner served 2,404 days between October 1, 2004, and May 2, 2011, and the 360 day credit satisfied the remaining term of incarceration for the sentence described in ¶ B.

---

[3] The amount of ESC an inmate in a VDOC facility earns depends on that inmate's security classification. The VDOC may classify an inmate as a Level I, II, III, or IV offender, who would earn 4.5 days' ESC, 3 days' ESC, 1.5 days' ESC, or 0 days' ESC for every thirty days served, respectively.

On May 2, 2011, petitioner began serving the concurrent 1,796 day sentences described in ¶¶ D and E.[4] The VDOC awarded petitioner 538 days[5] of jail credit for the time he was at Serenity House, which reduced his 1,796 day sentence to 1,258 days. Petitioner also earned 40 days' ESC while he stayed at Serenity House, further reducing the concurrent sentences to 1,218 days. Petitioner is presently serving these concurrent sentences. When petitioner executed the instant habeas petition on July 4, 2011, petitioner had physically served 3,831 days of his total 7,274 day sentences. Consequently, petitioner completed the sentence described in ¶ B, is presently serving the concurrent sentences described in ¶¶ D and E, and is required to serve the future sentences described in ¶¶ F and H.

## II.

Respondent filed a motion to dismiss that presents information beyond the pleadings that the court will not exclude. Consequently, the court treats the motion to dismiss as a motion for summary judgment.[6] Fed. R. Civ. P. 12(d), 56. A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine

---

[4] The Circuit Court of Loudon County entered these concurrent sentences for four years and eleven months (1,796 days).

[5] One of petitioner's claims is that the VDOC did not award him the total jail credit for the time he spent at Serenity Home between February 16, 2001, and August 8, 2002, which equals 538 days. The data refutes petitioner's claim because the VDOC credited him 538 days' jail credit for the time he was Serenity House, the same amount he alleges he deserves.

[6] The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

      The Supreme Court of Virginia dismissed petitioner's state habeas petition because "[state] habeas corpus does not lie in this matter" pursuant to Carroll v. Johnson, 278 Va. 683, 685 S.E.2d 647 (Va. 2009).  Therefore, the Supreme Court of Virginia's dismissal of petitioner's state habeas petition did not constitute an adjudication "on the merits" for purposes of 28 U.S.C. § 2254(d).  Boger v. Young, No. 7:10-cv-00175, slip op at 5-6, 2010 U.S. Dist. LEXIS 123884, at *9-10, 2010 WL 4861616, at *3 (W.D. Va. Nov. 23, 2010) (Wilson, J.).  Section 2254(d) provides that a federal court may not grant a federal habeas petition unless the state court's adjudications of the same claim is contrary to, or an unreasonable application of, clearly

established federal law, or based on an unreasonable determination of the facts. Section 2254(d)'s deferential standard of review does not apply to the instant petition because the Supreme Court of Virginia's decision "was not based on the underlying merits but rather on the unavailability of [state] habeas" relief. Id. Accordingly, the court reviews petitioner's claims de novo. Hudson v. Hunt, 235 F.3d 892, 895 (4th Cir. 2000).

A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner is not entitled to federal habeas relief to the extent he claims that he is incarcerated in violation of state law, but petitioner's broad claim that the VDOC improperly calculated his ESC and jail credits implicates the due process clause of the Fourteenth Amendment. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. . . . [A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Durkin v. Davis, 538 F.2d 1037, 1039-40 (4th Cir. 1976) ("[T]he right to credit for jail time awaiting trial on a bailable offense and pending appeal is not a matter of legislative grace but is a right constitutionally mandated, available to state prisoners as well as federal prisoners.") (citations omitted). Plaintiff must make a threshold showing that the imposed deprivation, the alleged denial of ESC and jail credit being applied to his sentences implicates a federal constitutional right by imposing an "atypical and significant hardship" or "inevitably affect[ing] the duration of his sentence." Sandin v. Conner, 515 U.S. 472, 484, 487 (1995).

Petitioner fails to establish that all the challenged credits inevitably affect the duration of his sentences, and, thus, some of these claims are premature.[7] The ripeness doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967). "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." Metzenbaum v. Fed. Energy Regulatory Comm'n, 675 F.2d 1282, 1289-90, 219 U.S. App. D.C. 57 (C.A.D.C. 1982). To determine whether a case is ripe for review, a court considers "'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 200 (1983) (quoting Abbott, 387 U.S. at 149). See W. Va. Highlands Conservancy v. Babbitt, 161 F.3d 797, 800-01 (4th Cir. 1998) (determining hardship by analyzing the immediacy and degree of hardship the party seeking relief will suffer if adjudication is delayed and noting that hardship must be immediate, direct, and significant).

The record clearly establishes that petitioner just began serving his concurrent sentences described in ¶¶ D and E before he filed the petition and that he has not yet begun serving the sentences described in ¶¶ F and H. Logically, petitioner cannot challenge future ESC that he had not yet earned when he filed the petition in July 2011. Petitioner also cannot challenge anticipated release dates for his present and future sentences because these sentences are subject to future events that may never occur. Petitioner's classification may change, which changes the

---

[7] Petitioner does not address how the calculations constitute an atypical and significant hardship.

rate of ESC, or he may forfeit credited time because of disciplinary convictions.  The simple fact that petitioner could serve the entire 1,796 day sentence would not be an undue hardship and would not present a federal constitutional issue.  See, e.g., Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").  Accordingly, petitioner's challenges to the release dates for the sentences described in ¶¶ D, E, F, and H and to the award of jail credit for sentences described in ¶¶ F and H do not "inevitably affect the duration of his sentences" and cannot be presently decided.  Accordingly, these claims are dismissed without prejudice as premature.

To the extent petitioner has already served time or had credits applied to a sentence, petitioner is entitled to the full benefit of accumulated credits, and the VDOC cannot take away that benefit without due process.  See Wolff v. McDonnell, 418 U.S. 539, 557 (1974) ("But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (finding that the deprivation of earned good-time credit without notice or hearing and without due process is subject to habeas review).

Petitioner completed the 3,652 day sentence described in ¶ B because he served 2,404 days and earned 1,248 days' credit.  The 1,248 days' credit consists of 826 days' jail credit, 62 days' ESC earned in local facilities, and 360 days' ESC earned in VDOC facilities.  Petitioner fails to establish that VDOC officials violated due process by misapplying these

9

credits.  Accordingly, petitioner is not entitled to relief for the 3,652 day sentence described in ¶ B.

Petitioner specifically alleges that the VDOC did not apply the correct amount of jail credit for the 538 days he spent at Serenity House.  However, the record reflects that petitioner did receive 538 days' jail credit for his time at Serenity House and that this credit was applied to the concurrent sentences described in ¶¶ D and E.  Accordingly, petitioner fails to establish that VDOC officials violated due process for the Serenity House jail credit, and petitioner is not entitled to relief for this claim.[8]

Petitioner broadly accuses VDOC officials of misapplying jail credit for the time he was incarcerated at various correctional facilities since 1999.  Petitioner merely listed all the dates and places he was incarcerated, and he did not relate any imposed sentence to these periods of incarceration.  In support of their motion, respondents illustrated that due process was not violated by filing two detailed analyses of the credits applied to petitioner's prior and current sentences.  Petitioner twice failed to respond to their evidence and consequently fails to demonstrate the existence of a genuine dispute of fact.  See, e.g., Fed. R. Civ. P. 56(e)(3) (authorizing a court's grant of summary judgment when a party fails to properly address a summary judgment movant's factual assertions).  Accordingly, petitioner fails to carry his burden for his claims about jail credit applicable to the sentences described in ¶¶ B, D, and E, and these claims are dismissed.

---

[8] Petitioner does not challenge the accumulated ESC for the sentences described in ¶¶ D and E.

III.

For the foregoing reasons, the court grants respondent's motion to dismiss in part and denies it in part. Petitioner's challenges to his sentences described in ¶¶ F and H and challenges to his sentences described in ¶¶ D and E accruing after July 4, 2011, are dismissed without prejudice as premature. Petitioner's claims about his sentence described in ¶ B and sentences described in ¶¶ D and E accruing before July 4, 2011, are dismissed with prejudice. Based upon the court's finding that petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied. This action is now complete, and the Clerk shall strike the case from the court's active docket.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to petitioner and counsel of record for respondent.

Entered:  March 5, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge